UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AIR-CON, INC.

  Plaintiff,

v.

DAIKIN APPLIED LATIN AMERICA, L.L.C.;
DAIKIN NORTH AMERICA, L.L.C. A/K/A
DAIKIN COMFORT;TECHNICAL
DISTRIBUTOR, INC.; ABC

  Defendants.

CIVIL NO. 15-2683

**MOTION TO REMAND CASE TO STATE COURT**

**TO THE HONORABLE COURT:**

    COMES NOW, Plaintiff, Air-Con, Inc. ("Air-Con"), through its undersigned legal representation, and without submitting to this Honorable Court's jurisdiction very respectfully states and prays as follows:

**BACKGROUND**

    On October 30th, 2015 co-defendant, Daikin Applied Latin America, LLC ("Daikin Applied") filed a Notice of Removal before this Honorable Court (Docket No. 1). Therein Daikin Applied requests that certain civil action initiated by Air-Con before the Commonwealth of Puerto Rico's Court of First Instance, San Juan Superior Part, under the caption *Air-Con, Inc. v. Daikin Applied Latin America, LLC, et als.* Case No. SJ2015CV00281 (the "State Action") be removed to this Court.

    Daikin Applied's main argument in support of its petition for removal is that co-defendant Technical Distributor, Inc. ("Technical"), a Puerto Rico corporation, was fraudulently joined to the State Action in order to destroy complete diversity jurisdiction in the case. As we

elaborate hereinafter, Daikin Applied has not proven by ***clear and convincing evidence*** its allegations of a "fraudulent" joinder.

Moreover, presumably by mistake and/or for lack of knowledge, Daikin Applied has included several erroneous allegations in its Notice of Removal which may mislead this Honorable Court in its evaluation of its petition and therefore, needs to be clarified.

## APPLICABLE LEGAL DOCTRINE

"The district courts of the United States are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." See, *In re Olympic Mills Corp.*, 477 F.3d 1, 6 (1st Cir. 2007) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)).

In 258 U.S.C. §1332, the sole basis for jurisdiction in this case, Congress bestowed upon the district courts original jurisdiction in civil actions between citizens of different states. The diversity requirement of §1332 must be complete. In cases involving multiple plaintiffs or defendants, the presence of but one non-diverse party divests the district court of original jurisdiction over the entire action. *In re Olympic Mills Corp.*, 477 F.3d at 6.

Now, **a defendant seeking to prove that a co-defendant was fraudulently joined [to a cause of action in order to destroy diversity], bears an extremely heavy burden**. See *Ponce Super Center, Inc. v. Glenwood Holdings, Inc.*, 359 F. Supp. 2d 27, 30 (D.P.R. 2005) (citing *Chesapeake & Ohio Rv. Co. v. Crockrell*, 232 U.S. 146, 152, 34 S. Ct. 278, 58 L. Ed. 544 (1914) (holding that the showing of fraudulent joinder must be such to compel the conclusion that joinder is without right and made in bad faith)).

This Court has held that when a plaintiff states a valid claim against a defendant, it is unlikely that the primary purpose of bringing that defendant into a litigation is to destroy diversity. See *Hernández v. Raytheon*, 2006 WL 1737167 (D. P.R. 2006).

"[A] finding on fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant." *Polyplastics, Inc. v. Transconex, Inc.*, 713 F. 2d 875, 877 (1st. Ci. 1983). Other Circuit Courts have concluded that in order to prove a fraudulent joinder, the movant must show, by clear and convincing evidence, that (1) there was actual fraud in the pleading of jurisdictional facts, or (2) that the plaintiff is unable to establish a cause of action against the non-diverse party in state court. *Smith v. Petsmart, Inc.*, 278 Fed. Appx. 377, 379 (5th Cir. 2008); *Gash v. Hartford Accident & Indem. Co.*, 491 F. 3d 278, 281 (5th Cir. 2007); *Ponce Super*, 359 F. Supp. 2d at 30.

When defendants rely on the second prong of this test, the Court must determine if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Gash*, 491 F. 3d at 281. **All contested factual issues and any doubt as to the propriety of the removal must be resolved in favor of remand**. *Id*. At 281-282.

Moreover, any doubts concerning the legal viability of the claim or claims for relief against the non-diverse party will be appraised and resolved by the federal court in favor of the allegations of the state court plaintiff. Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3641.1 (3d ed.).

The Puerto Rico Dealers' Act, Law 75, 10 L.P.R.A. §278-278d ("Act 75") provides for a damages cause of action against a principal whom, without cause, terminates a distribution

relationship or performs any detrimental act which impairs said distribution relationship. See 10 L.P.R.A. §278a.

Article 2 of Act 75, as codified in 10 L.P.R.A. §278a, specifically states that notwithstanding the existence of a clause in a distribution agreement granting a party (principal or distributor) the right to unilaterally terminate the same, no party may do so, or somehow directly or indirectly perform an act impairing the established relationship, or refuse to renew the same upon its expiration, **except for just cause**.

It follows then that a distribution relationship, or a distribution agreement for that matter (notwithstanding a specific clause to that effect), is NOT terminable at will and that a principal under Act 75 may not take any action which, directly or indirectly, impairs an established distribution relationship.

Act 75 also provides for a temporary injunction remedy while the action is pending and therefore, in order for the dealer to obtain a full relief, an injunction might have to be issued against both the principal and the additional dealer who was appointed in violation of plaintiffs' distribution rights. If the new dealer, for instance, has already received a significant inventory by the time the suit was initiated, the court might be within its power to enjoin the distribution for those goods under 10 LPRA 278b-1. See *El Gran Video Club Corp. v. E.T.D.* 757 F. Supp. 151, 154 (1991).

As per *El Gran Video Club Corp. v. E.T.D., supra,* if only the receipt of inventory by the new dealer may warrant the issuance of an injunction against it, we respectfully submit that the issuance of the injunction is more than warranted upon being evidenced to the Court that the new dealer is already selling said inventory which is the object of the established exclusive distribution relationship.

This Honorable Court has ruled that "a cause of action [against a new dealer] for tortious interference is inextricably linked to plaintiff's original Law 75 claim and both claims should be heard together". See *Irizarry v. Marine Power Int'l*, 153 F.R.D. 12, 15 (D.P.R. 1994). The cause of action of tortious interference has been explicitly recognized by the Supreme Court of Puerto Rico in *General Office Products v. A.M. Capen's Sons*, 115 D.P.R. 553 (1984) (as cited in Irizarry v. Marine Powers, 153 F.R.D. at 15).

The tort arises under the general tort statute in the Puerto Rico Civil Code, Article 1802, 31 L.P.R.A. §5141. The elements are the following: 1) there must be a contract in which a third party interferes; 2) there must be "fault" on the part of the third party, in that the factfinder must be able to infer that the third party knew of the existence of the contract and acted intentionally; 3) the plaintiff must show actual injury resulting from the action of the third party. A casual nexus must exist; namely, prove that the acts of the third party contributed to or provoked the breach. It is not a defense to show that the principal had intended on its own not to honor the contract. See *El Gran Video Club Corp. v. E.T.D.* 757 F. Supp. At 154.

This Honorable Court has stated in a case involving a claim under Act 75 against a principal, together with a tortious interference claim against the new dealer, that under the context of a removal petition, the pleadings must be read liberally. "Modern notice pleading seeks to emphasize substance over technical nicety". See *El Gran Video Club Corp. v. E.T.D.* 757 F. Supp. At 154.

In *El Gran Video Club Corp*, the Court determined that plaintiff properly pleaded a tortious interference claim against the new dealer, who was a Puerto Rico resident and therefore, determined that there was no original jurisdiction under diversity. Since both claims arose out of

the cancellation of the same contract, there can be no "separate and independent" claims and therefore, both claims where remanded to the state court.

Finally, in its Article 4, as codified in 10 L.P.R.A. §278c, Act 75 provides that, **notwithstanding any corporate structures or mechanisms chosen by the principal to exploit an established distribution relationship**, while adjudicating claims under its provisions, the rights afforded thereunder are to be considered of public order, non-waivable, and liberally interpreted in favor of that party who effectively is in charge of the distribution activities.

## DISCUSSION

**(a) The allegedly fraudulent joinder of Technical to defeat full and complete diversity**

Having reviewed the evaluation standard which we most respectfully submit should be applied by this Honorable Court to determine if the joinder of co-defendant Technical was fraudulently made to defeat the full and complete diversity rule, we hereby submit that Daikin Applied has failed to meet the *extremely heavy burden* required by applicable case law. [1]

In the State Action's complaint, Air-Con included a tortious interference claim against Technical. As this Honorable Court should easily corroborate, the complaint included the following allegations directly addressed against co-defendant Technical, which should be read in conjunction with all the paragraphs of the complaint:

> "23.    On the other hand, recently Technical notified in writing another practice that is occurring which shows ***the clear interest in affecting* Air-Con's distribution rights**. Presumably, Daikin NA sends to Puerto Rico equipment with the logo and label of Daikin so that Technical can take charge of removing the labels and replacing them with Goodman labels…"

---

[1] It is worth mentioning that the instant case was initiated by plaintiff at Puerto Rico's Court of First Instance. This is not the typical situation where the action commenced at federal court and then, a party tries to join a non-state resident in order to defeat federal jurisdiction.

27. Certainly,…***Technical has taken undue advantage*** of the efforts that Air-Con has made during the past 15 years to create a solid market for the Daikin brand in Puerto Rico, violating and impairing its exclusive distribution rights.

32. …we hereby request that defendants be ordered to:

    (…)
    b. ***Abstain, directly or through its affiliates, from establishing with third persons, including, but not limited to Technical***, a distribution relationship in Puerto Rico in detriment to the distribution relationship established with Air-Con.

39. Finally, ***Technical has been distributing products under the Daikin brand in Puerto Rico <u>tortiously interfering</u>*** with the exclusive distribution relationship already established between Air-Con and Dakin Applied. (See Docket No. 1-2)

Moreover, as part of the remedies requested in the complaint and in the Urgent Request for Statutory Injunction Under Law 75, Air-Con requested the Puerto Rico Court to enter into an order of preliminary and permanent injunction prohibiting Technical from selling locally Daikin products in Puerto Rico in detriment to the exclusive distribution relationship existing between Daikin Applied and Air-Con and/or that it interfere with the aforementioned exclusive distribution relationship. (See Docket No. 1-2)

As this Honorable Court could see, Air-Con has made specific allegations of fact and requested specific remedies against Technical in support of a tortious interference claim. More importantly, Air-Con has requested a preliminary and permanent injunction against Technical in order to enjoin it from selling Daikin branded equipment in violation of Air-Con's exclusive distribution rights. Therefore, Technical is an indispensable party in the case since any injunctive relief remedy which might be granted in favor of Air-Con could potentially affect any alleged contractual relationship it might have with Daikin NA.[2] Precisely, this was the main reason taken into consideration by Air-Con when it joined Technical as a party to the case.

---

[2] Federal Rule of Civil Procedure 19 (b) specifies four factors to guide the indispensability inquiry. These include:

*Motion to Remand*
Civil No. 15-2683
Page **8** of **13**

**(b) The purported written distribution agreement allegedly entered with Daikin Industries**

As a second argument in support of the Notice of Removal, Daikin Applied specifically alleges that it entered with Air-Con into a written non-exclusive distribution agreement which purportedly renders moot any tortious interference claim against Technical. Said allegation is proven erroneous as evidenced by the same exhibit which was attached to Daikin Applied's motion.

As this Honorable Court should easily corroborate, the document included by Daikin Applied as Exhibit I of the Notice of Removal (filed under seal) **is not a binding agreement or contract** since the same was never executed by one of its alleged signatories (i.e. Daikin Industries, Ltd.) (See **Exhibit I filed under seal**).

Exhibit I contains a draft which was supposed an agreement to be executed by Daikin Industries Ltd. ("Daikin Industries"), a corporation organized under the laws of Japan with principal offices located at Osaka Japan. However, said draft was never executed by Daikin Industries and therefore, the same could not be considered nor construed to be a binding agreement or contract.[3]

Air-Con has never done business with Daikin Industries. As it was alleged in the complaint, in the year 2000 Air-Con began its exclusive distribution relationship with Daikin

---

(1) To what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. See B. Fernández & Hnos., Inc. v. Kellogg USA, Inc. 516 F. 3d 18 (1st Cir. 2008).

[3] Under Puerto Rico law, a contract has three elements: consent, a definitive (and legal) object, and consideration." *Citibank Global Markets, Inc. v. Rodríguez Santana,* 573 F.3d 17, 25 (1st Cir.2009). Under Puerto Rico law, "the consent of the contracting parties is an essential element of a contract." 31 LPRA § 3391.

Applied, not with Daikin Industries.[4] Since the inception of the distribution relationship, Air-Con has bought all of the Daikin branded products directly from Daikin Applied (and its predecessors), all of which were and Daikin Applied is a subsidiary of Daikin Industries and therefore, a different legal entity.[5]

And even if we were to stipulate for discussion purposes only that Exhibit I was executed by Daikin Industries and indeed constitutes a binding contract, which we strenuously deny, the same contains a non-assignability clause which would effectively prevent its assignment to Daikin Applied. Section 28 of Exhibit I read as follows:

> "This Agreement, and all rights duties and obligations described herein, are personal to each party and may not be assigned or otherwise transferred in whole or part *__without written consent of the other party__*. Any such assignment or transfer of this Agreement or any part hereof shall be null and void." [Our emphasis]

Needless to say, Air-Con has never consented in writing, or verbally for that matter, to the assignment of the purported agreement from Daikin Industries to Daikin Applied. Therefore, Daikin Applied's contention that Exhibit I governs its existing distribution relationship with Air Con and that the arbitration provision contained therein is binding not only is untenable, but also outright frivolous.

Moreover, to further substantiate the frivolity of Daikin Applied's argument, this Court should note that Exhibit I contains a provision which requires all prices to be quoted and paid in Japanese Yen. Quite to the contrary, Air-Con has never made any payment in Japanese currency.[6]

---

[4] See Docket 1-2, Complaint ¶10.

[5] See Corporate Disclosure Statement filed by Daikin Applied, Docket No. 9.

[6] See clause 7 of Exhibit I (filed under seal).

Contrary to Daikin Applied's interpretation of the allegations made in the complaint, Air-Con clearly averred that it established a distribution relationship with "what is now Daikin Applied" because said company had predecessor entities which were known under different names and Air Con wanted to avoid any confusion. However, a review of the complaint would easily corroborate the fact that Air Con has NOT averred that Daikin Applied is the same as Daikin Industries.[7]

The terms and conditions of Air-Con and Daikin Applied's exclusive distribution relationship were never documented in writing.[8]

Daikin Applied also alleges that, since it has no relationship whatsoever with Technical Distributors, "there is no valid tortious interference claim in this case, as a matter of law."

Based on the legal discussion above, the tort claim arises under the general tort statute in the Puerto Rico Civil Code, Article 1802, 31 L.P.R.A. §5141. As previously discussed, the elements to the cause of action are the following: 1) there must be a contract in which a third party interferes; 2) there must be "fault" on the part of the third party, in that the factfinder must be able to infer that the third party knew of the existence of the contract and acted intentionally; 3) the plaintiff must show actual injury resulting from the action of the third party.

We respectfully submit that the complaint contains sufficient elements against Technical in order to establish a tortious interference cause of action: 1) there is an exclusive non-written exclusive distribution agreement between Daikin Applied and Air-Con, 2) Technical has

---

[7] Please refer to paragraph 5 of the Complaint where it was stated that "[a]ccording to the best information and/or belief, codefendants Daikin Applied and/or Daikin NA are *__subsidiaries__* of the manufacturing company Daikin Industries, Ltd. with offices locates in Japan."

[8] A distribution relationship has protection under Act 75, although it is not in a written agreement. See 10 L.P.R.A. §278 (b).

intentionally interfered with the aforesaid relationship by selling Daikin branded equipment in Puerto Rico and 3) Air-Con has suffered damages as a result of Technical's action. There is no element which requires the third party (i.e. Technical) to have a contractual relationship with one of the contractual parties (i.e. Daikin Applied and/or Air-Con). [9]

Finally, Daikin Applied alleges that since Technical obtains its products from a third party outside of Puerto Rico, this Court has ruled that the eventual resale of the products lawfully acquired from a third party "cannot be said to have interfered in [Air-Con's] rights to the contract with [Daikin Applied]".

It is important to bring to this Court's attention that the case cited by Daikin Applied in support of its argument, *Sterling Merchandising, Inc. v. Nestle, S.A.*, 546 F. Supp. 2d 1 (2008) is completely distinguishable to the instant case.

In that case, the distributor (Payco) alleged that it had an exclusive distribution agreement with its principal (MFI), and that Sterling (a third-party distributor) interfered with the aforesaid agreement by buying MFI's products from a fourth party (Schoep). However, in that case the fourth party (Schoep) did not have any relationship with MFI or to a party to the contract. See *Id*, at page 3.

Said case is completely distinguishable from the instant case, since Daikin NA (who sells Daikin branded products to Technical) is an affiliate of Daikin Applied and both are subsidiaries of Daikin Industries. As provided for in Article 4 of Act 75, notwithstanding the corporate structure chosen by the principal to conduct its business or businesses, said corporate structure

---

[9] Daikin Applied alleges that, without submitting any evidence in support, Technical's contractual relationship is with Goodman Distributors, Inc. First, it is important to note that Air-Con has included ABC, as unknown codefendant which is a subsidiary and/or affiliate of Daikin Applied and/or Daikin NA and which may have responsibility in the case. Second, at this stage of the proceedings, pleading should be interpreted liberally and any contested factual issues should be resolved in favor of remand. ." *Gash*, 491 F. 3d at 281, 282.

may not legally have the effect of intentionally or unintentionally impairing Air-Con's rights under Act 75. Concluding the contrary would be the equivalent of allowing the circumvention of the principal's obligations under Act 75 merely by the incorporation of a commonly owned or controlled legal entity.

We rhetorically ask ourselves what would be the position of Daikin Applied and Daikin NA if an injunction remedy is eventually obtained in this case without Technical being named as a defendant. It should be obvious that any such remedy would effectively preclude Technical, beyond any existing inventory, from continue selling Daikin products in Puerto Rico. Any such order, without the presence of Technical in this case, would be issued without an indispensable party; thus rendering null and void the same.

This Court should note that having all co-defendants as parties to this action "will promote the efficient use of judicial resources, especially since there is a significant lack of federal interest in deciding the state law issues of Law 75 and tortious interference with contract…It will also close the possibility of inconsistent federal and state court judgments." *Irizarry v. Marine Power Int'l*, 153 F.R.D. at 15-16.

After a careful review of the facts and the record available to the court in this case, it's evident that the appearing party did **not** include Technical as a codefendant in a fraudulent manner with the purpose of destroying diversity. Daikin Applied has failed to overcome the extremely heavy burden of showing with clear and convincing evidence that Air-Con acted fraudulently when joining Technical to the case. Therefore, we respectfully submit that the proper forum for this litigation is the state court in which all claims and responsible parties may be included for litigating issues of local law.

**WHEREFORE**, the appearing party respectfully requests this Honorable Court take notice of the above and remands this case to state court for lack of complete diversity jurisdiction.

**RESPECTFULLY SUBMITTED.**

I hereby certify that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all the attorneys of record.

In Guaynabo, Puerto Rico, on this 5th day of November, 2015.

**COUNSEL FOR AIR-CON:
MARICHAL, HERNANDEZ,
SANTIAGO & JUARBE, LLC**
Triple S Plaza
1510 F.D. Roosevelt Ave.
9th Floor, Suite 9 B1
Guaynabo, Puerto Rico 00968
P.O. Box 190095
San Juan, Puerto Rico 00919-0095
Phone: (787) 753-1565
Fax: (787) 763-1704

/s/ Rafael M. Santiago-Rosa
**Rafael M. Santiago-Rosa**
USDC P.R. No.211705


/s/ Vanessa Medina-Romero
**Vanessa Medina-Romero**
USDC P.R. No.219403