**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**AIR-CON, INC.,**

**Plaintiff,**

**v.**

**DAIKIN APPLIED LATIN AMERICA LLC, et al.,**

**Defendant.**

**CIVIL NO. 15-2683 (GAG)**

**OPINION AND ORDER**

Presently before the Court is Plaintiff Air-Con, Inc.'s ("Air-Con") motion to remand (Docket No. 10), Daikin Applied Latin America, LLC's ("Daikin Applied") and Technical Distributors, Inc.'s ("Technical") (collectively "Defendants") oppositions thereto (Docket Nos. 13, 15 & 35), and Air-Con's reply (Docket No. 26).[1]  After reviewing the filings and the applicable law, Air-Con's motion to remand is **GRANTED**.

**I.      Relevant Factual and Procedural Background**

On October 21, 2015, Air-Con brought this action against Daikin Applied and Daikin North America, LLC ("Daikin NA") before the Puerto Rico Court of First Instance, seeking damages and injunctive relief for the alleged impairment of an exclusive distribution agreement in violation of the Puerto Rico Dealers' Contract Act ("Law 75), P.R. Laws Ann. tit. 10, § 278 *et seq*., and for breach of contract under the Puerto Rico Civil Code.  (Docket No. 1-2.)  Plaintiff also alleges that Technical

---

[1] Because both defendants opposed the motion to remand, the Court will treat all arguments advanced by them collectively.

**Civil No. 15-2683**

Distributor, Inc. ("Technical") tortuously interfered with its contractual relations with Daikin Applied. Id.

On October 30, 2015, Defendants removed the case to this Court on the basis of diversity jurisdiction.[2] (Docket No. 1.) They argue that removal is proper under 28 U.S.C. § 1441(a) because Technical, the only non-diverse defendant, was "fraudulently joined to destroy complete diversity jurisdiction in this case." (Docket No. 24, p. 3.) Defendants specifically argue that there is no valid tortious interference claim because (1) Air-Con has failed to plead that Technical had knowledge of the distribution agreement between Air-Con and Daikin Applied, a necessary element of a tortious interference claim (Docket No. 13, p. 2-3), (2) Daikin Applied has no commercial relationship with Technical (Docket No. 24, p. 4-5); and (3) Daikin Applied's agreement with Air-Con is governed by a written contract that only confers *non-exclusive* distribution rights of Daikin branded products in Puerto Rico and the Caribbean. Id. In the alternative, they contend that the case is removable on the basis of federal question jurisdiction. (Docket No. 24, p. 5-8.)

Air-Con opposed the removal and filed a motion to remand arguing that Defendants have failed to overcome the extremely heavy burden of showing that Air-Con acted fraudulently when it joined Technical as a party to the case. (Docket No. 10.) According to Air-Con, the allegations in the complaint, read together and in the proper context, are sufficient to establish a tortious interference claim against Technical. (Id. at p. 6-7; Docket No. 26, p. 3.) Furthermore, Air-Con argues that the alleged written agreement "is not a binding agreement or contract since the same was never executed by one of its alleged signatories . . . [and that] in the year 2000 Air-Con began its

---

[2] The notice of removal was amended on November 20, 2015, that is, within the 30-day period for removal provided in 28 U.S.C. § 1446(b). See Charles Alan Wright, et al., Federal Practice and Procedure: Jurisdiction and Related Matters § 3733 (4th ed.). Plaintiff did not oppose.

2

exclusive distribution relationship with Daikin Applied, not with Daikin Industries." (Docket No. 10, p. 8-9.)

## II. Standard of Review

A civil action filed in state court over which the federal courts would have had original jurisdiction based on diversity of citizenship, may be removed to federal court provided that no defendant is a citizen of the State in which such action is brought. Universal Truck & Equip. Co., Inc. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014) (quoting 28 U.S.C. § 1441(b)(2)). Federal courts are courts of limited jurisdiction and, thus, removal statutes are to be narrowly construed. López-Muñoz v. Triple-S Salud, Inc., 754 F.3d 1 (1st Cir. 2014). Accordingly, the removing defendant generally bears the burden of demonstrating the federal court's jurisdiction. Id. "Because removal statutes are narrowly construed against removal, and because of the crucial federalism concerns at play, any ambiguities 'as to the source of law relied upon by the . . . plaintiffs ought to be resolved against removal.'" Bonilla-Pérez v. Citibank NA, Inc., 892 F. Supp. 2d 361, 636-64 (D.P.R. 2012) (citations omitted). Therefore, when plaintiff and defendant clash about federal jurisdiction, all doubts should be resolved in favor of remand to state court. Id. (quoting Junk v. Terminix Int'l Co., 628 F.3d 439, 446 (8th Cir. 2010)); Asoc. de Detallistas de Gasolina de P.R. v. Shell Chem. Yabucoa, Inc., 380 F. Supp. 2d 40, 43 (D.P.R. 2005) (citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994)).

## III. Applicable Law and Analysis

Generally, fraudulent joinder "occurs when a nondiverse party is added solely to deprive the federal courts of diversity jurisdiction." 16 James W. Moore et al., Moore's Federal Practice § 107.52[4][a]. "A party fraudulently joined to defeat removal need not join in a removal petition, and is disregarded in determining diversity of citizenship." Polyplastics, Inc. v. Transconex, Inc.,

713 F.2d 875, 877 (1st Cir. 1983). With regard to the analysis that governs claims of fraudulent joinder, the First Circuit recently stated that "it is generally recognized that, under the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant." Universal Truck, 765 F.3d at 108 (citing Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992) ("[T]he federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?"); McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."))[3]

In Universal Truck, however, the First Circuit did not define the term "reasonable possibility[.]" See Rosbeck v. Corin Group, PLC, 140 F. Supp. 3d 197, 202 (D. Mass. 2015). But, as explained in Rosbeck, it is clear that "if existing state law squarely precludes a plaintiff's claim against a non-diverse defendant, and such deficiency is 'apparent from the face of the original complaint,' the nondiverse defendant is fraudulently joined. Rosbeck, 140 F. Supp. 3d at 202 (quoting Universal Truck, 765 F. 3d at 108 ("finding fraudulent joinder when existing state law barred the claim")). "The difficulty arises when no state apex court decision answers the question, notwithstanding indications (opinions in related areas, other jurisdictions' answers to the particular question, etc.) pointing in certain directions." Id.

---

[3] Due to variations on the standards among the circuit courts, distinctions have been made between "the possibility of recovery" and "the possibility of stating a claim". See Walter Simons, Choice of Law in Fraudulent Joinder Litigation, 163 U. Pa. L. Rev. 603, 614-5 (2015). In Universal Truck, the First Circuit made no distinction on this regard. See Universal Truck, 765 F.3d at 108.

**Civil No. 15-2683**

Generally, "so long as [federal courts] have jurisdiction, [they] must 'decide questions of state law whenever necessary to the rendition of a judgment,' even when 'the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state.'" Id. (quoting Meredith v. City of Winter Haven, 320 U.S. 228, 234-35 (1943)). When reviewing a fraudulent joinder claim, however, "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved. . . . *[but] in its review of a fraudulent-joinder claim, the court has no responsibility to <u>definitively</u> settle the ambiguous question of state law*." Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 809 (8th Cir. 2003) (emphasis added); see also Rosbeck, 140 F. Supp. 3d at 203; Badon v. RJR Nabisco, Inc., 236 F.3d 282, 285 (5th Cir. 2000).[4]

In determining whether there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant, Universal Truck, 765 F.3d at 108, the Court must apply a Rule 12(b)(6)-type analysis. See Sea World, LLC v. Seafarers, Inc., Civ. No. 16-1382, 2016 WL 3258360, *4, __ F. Supp. 3d __ (D.P.R. 2016); Alpha Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV, 828 F. Supp. 2d 425, 433 (D.P.R. 2011) (stating that "it seems simplest to treat the inquiry as a modified version of a motion to dismiss, asking whether the state complaint states a plausible claim under [Federal Rule Civil Procedure] 8(a)(2)"); see also Gray ex rel. Rudd v. Beverly Enters.-Mississippi, Inc., 390 F.3d 400, 405 (5th Cir. 2004). Under this standard, all factual and legal issues must be resolved in favor of the plaintiff and a defendant seeking removal bears a "heavy burden"

---

[4] Chiasson v. Honeywell Intern, Inc., Civ. No. 05-5221, 2008 WL 4146692, *9 (E.D. La., Aug. 29, 2008) (stating that the Eight Circuit "has cited with approval the Fifth Circuit's holding that the Erie doctrine has a limited role to play in improper joinder analysis").

5

to demonstrate that the joinder is fraudulent. Rosbeck, 140 F. Supp. 3d at 203 (quoting Philips v. Medtronic, Inc., 754 F. Supp. 2d 211, 217 (D. Mass. 2010); Renaissance Mktg. v. Monitronics Int'l, Inc., 606 F. Supp.2d 201, 208 (D.P.R. 2009); 6 Moore's Federal Practice- Civil, supra, § 107.52 [4][c]; see also 14B Charles Alan Wright et al., Federal Practice and Procedure: Jurisdiction and Related Matters § 3723 (4th ed.).[5] The court must also resolve "legal ambiguities in the controlling state law in favor of the non-removing party." Rosbeck, 140 F. Supp. 3d at 203; Bonilla-Pérez, 892 F. Supp. 2d at 365. "All doubts are to be resolved in favor of remand to state court." 6 Moore's Federal Practice- Civil, supra, § 107.52 [4][c].

    *A.    The tortious interference claim*

Relying on Sterling Merch., Inc. v. Nestle, S.A., 546 F. Supp. 2d 1, 3 (D.P.R. 2008), Defendants contend that there is no valid tortious interference claim because Daikin Applied has no commercial relationship with Technical. According to Defendants, Technical allegedly obtains its products from a fourth party (not privy to the contract), Goodman Distributors, Inc. (Docket No. 24, p. 4.; see also Sterling Merch., Inc., 546 F. Supp. 2d at 3.) Thus, they argue that, since Technical acquired the Daikin products for eventual resale in Puerto Rico from a party other than Daikin Applied, Technical did not interfere with the contract between Daikin Applied and Air-Con.[6] The Court has reviewed Sterling Merchandising and the applicable law, and concludes that there is a

---

[5] "It is important that courts impose a heavy burden on defendants who remove on the basis of alleged fraudulent joinder because the practice of routinely removing cases to federal court by making borderline arguments of fraudulent joinder imposes tremendous costs on plaintiffs and the court system." 16 Moore's Federal Practice-Civil, supra, § 107-52[4][c].

[6] Defendants also submitted an unsworn declaration under penalty of perjury subscribed by Emiliano Santiago López, president of Technical Distributors, Inc., stating that "Technical Distributor is not selling any of the products sold by Air-Con, Inc." (Docket No. 13-1, ¶ 4.) Air-Con replied by filing an unsworn declaration under penalty of perjury signed by its president, Jaime Maldonado, stating with evidence attached that it "bought . . . from Technical Distributor, Inc. through a third party a piece of Daikin branded equipment." (Docket No. 26-1; see also Docket No. 26-2). The court may consider documents outside the pleadings when ruling on a fraudulent joinder claim. See 16 Moore's Federal Practice- Civil, supra, § 107-52[4][c].

reasonable possibility that the Puerto Rico Supreme Court could find that Air-Con's complaint states a cause of action for tortious interference claim against Technical.

In <u>Gen. Office Prod. Corp. v. A.M. Capen's Sons, Inc.</u>, 115 P.R. Dec. 553, 15 P.R. Offic. Trans. 727 (1984), the Puerto Rico Supreme Court held that a cause of action for tortious interference with a contractual relationship arises under Article 1802 of the Puerto Rico Civil Code. <u>Gen. Office Prod.</u>, 115 P.R. Dec. at 558. The Puerto Rico Supreme Court further held that the constitutive elements of a tortious interference claim are: (1) there must be a contract with which a third person interferes; (2) there must be "fault"; that is, that the prejudiced party need only show or present facts allowing the court to infer that the third person has acted tortuously, with knowledge of the contract's existence; (3) there must be a damage to the plaintiff; and (4) that the damage caused must be a consequence of the tortious acts of the third person (it suffices that the third person has provoked or contributed to the breach). <u>Id.</u> at 558-9.

The court in <u>Sterling Merchandising</u> considered facts similar to the allegations in the present case, but in the context of a motion to dismiss. <u>Sterling Merch.</u>, 546 F. Supp. 2d at 2. There, Sterling Merchandising Inc. ("Sterling") filed a complaint against Payco Foods Corp. ("Payco") for the alleged violation of federal and local antitrust laws. Payco counterclaimed "alleging that [Sterling had] intentionally interfered with an exclusive distribution contract between Payco and Masterfoods Interamerica ("MFI") by laterally buying MFI's products and selling them in Puerto Rico." <u>Id.</u> Sterling responded that the counterclaim was meritless because the elements of a cause of action for tortious interference were not present. <u>Id.</u> at 2-3. Specifically, Sterling argued that "it did not interfere with the Payco-MFI's contract because it did not purchase directly from MFI, and therefore, did not cause MFI to breach its contract with Payco." <u>Id.</u> at 2. But Payco replied that "the cause of action for tortious interference with a contract does not require that Sterling's purchases of MFI

products be made directly from MFI." Id.  The court agreed with Sterling and dismissed Payco's counterclaim.  In so ruling, the court gave great weight to the fact that Sterling purchased the MFI products from a fourth party and *outside* of Puerto Rico.  The court was particularly persuaded by the argument that "an exclusive distribution contract made in Puerto Rico between two parties cannot prevent purchases made outside of [Puerto Rico] by third parties even if it results in a resale in Puerto Rico later on." Id. at 3.  The court thus held that it was "reluctant to extend the P.R. Supreme Court's holding in General Office Products" to such situations. Id. at 3.

This Court, however, does not read the holding in General Office Products so narrowly.  In this Court's view, the Puerto Rico Supreme Court's holding does not preclude the possibility of validly stating a tortious interference claim against a third party that interferes with a contract, regardless of whether the interference was accomplished through its relationship with a fourth party or with a party to the contract with which it interfered.  Article 1802 of the Puerto Rico Civil Code establishes a very broad and general rule which may adapt to varying conditions and social needs. López v. Porrata Doria, 169 P.R. Dec. 135, 151 (2006).  Moreover, in the case at hand the Court cannot conclusively find that the purchases were made outside of Puerto Rico, as in Sterling Merchandising.  In any event, although General Office Products does not directly address a situation like the one at issue here, the Court finds that its holding is broad enough to at least potentially encompass such situations.  And since in the context of determining whether there has been a fraudulent joinder a court need not definitively settle an ambiguous question of state law, see Filla, 336 F.3d at 811, the Court finds that, given Article 1802 and General Office Product's broad scope, Defendants have failed to demonstrate that Air-Con has no reasonable possibility of success against Technical under a tortious interference theory.

As to whether Air-Con failed to plead the second element of the cause of action, the Court disagrees with Defendants. According to the complaint, in the year 2000, Air-Con entered into an exclusive distribution agreement with what is now Daikin Applied, (Docket No. 1-2, ¶ 10-11), pursuant to which Daikin Applied granted Air-Con the exclusive right to sell and distribute "air conditioners and related equipment marketed under the Daikin brand . . . [in] Puerto Rico and the Caribbean. Id. Air-Con further alleges in the complaint that it "invested millions of dollars in advertising campaigns, marketing, and sales efforts . . . to create the public recognition that the Daikin brand now enjoys in Puerto Rico." Id. ¶ 14.

Taking as true the allegations of the complaint and making all inferences in its favor, it is plausible that Technical, a Puerto Rico corporation dedicated to the sale and distribution of air conditioners (and a previous distributor of Goodman products), had knowledge of Air-Con's exclusive distribution rights to sell and distribute Daikin products. Moreover, the complaint expressly states that "recently, Technical notified in writing another practice that is occurring which shows the clear interest in affecting Air-Con's distribution rights." Id. ¶ 23. The complaint further states that "Technical has taken undue advantage of the efforts that Air-Con has made during the past 15 years to create a solid market for the Daikin brand . . ." Id. ¶ 27. Reading the complaint as a whole, instead of demanding a one-to-one relationship between any single allegation and a necessary element of the cause of action, Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 18 (1st Cir. 2016) (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013)), the Court concludes that there is a reasonable possibility that the Puerto Rico Supreme Court could find that Air-Con validly pleaded a tortious interference claim against Technical.[7]

---

[7] In another attempt to prevent this Court to remand the case, Defendants argue that, in any event, the tortious interference claim is time-barred. (See Docket No. 35.) The Court, however, will not entertain this argument because the facts establishing this defense are not clear on the face of the plaintiff's pleadings. Blackstone Realty LLC v. FDIC,

*B.    The alleged written agreement*

Air-Con alleges that it has an exclusive distribution agreement with Daikin Applied. (Docket Nos. 1-2, ¶ 10-11; 10, p. 8-9.)  Defendants argue, however, that the distribution agreement between Daikin Applied (and/or Daikin Industries) and Air-Con is a *non-exclusive* distribution agreement. (Docket No. 24, p. 4-8.)  According to Defendants, the written agreement confers Air-Con non-exclusive distribution rights of certain products under the Daikin brand in Puerto Rico.  (Id. at 4-5.) Therefore, even if Daikin Applied had sold Daikin products to Technical for its distribution in Puerto Rico, Technical could not have tortuously interfered with Air-Con's non-exclusive distribution rights.  Id. at 5.   They further argue that the written agreement contains an arbitration clause "mandating that any and all disputes in relation to the commercial relationship be submitted to arbitration in Osaka, Japan, [a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards]." (Docket No. 24, p. 6.) [8]  Accordingly, Defendants posit that, in the alternative, removal is proper based on federal question jurisdiction pursuant to Section 205 of the Federal Arbitration Act (FAA).  (9 U.S.C. § 205; see Docket No. 24, p. 7.)  The Court disagrees.

As to the nature of the agreement between Air-Con and Daikin Applied (exclusive or non-exclusive), it is unclear at this stage whether the document submitted by Daikin Applied (Docket No. 2-1) is actually the contract agreed upon by the parties. The document submitted by Daikin Applied is signed by only one party.[9]  Id.   And, under Puerto Rico law, one of the three essential

---

244 F.3d 193, 197 (1st Cir. 2001).  Moreover, pursuant to Local Rule 7, any reply or sur-reply memorandum "shall be strictly confined to replying to new matters raised in the objection or opposing memorandum." L.Cv.R. 7. At this point, it is not allowed to raise new arguments.

[8] The Convention is "an international agreement designed 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced.'" InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003). The United States is a signatory to the Convention and, to implement it, Congress enacted Chapter 2 of the FAA. Id.

[9] Air-Con also submitted an unsworn declaration under penalty of perjury from Air-Con's President stating, in pertinent part, that he "personally negotiated on or around March 2000, on behalf of Air-Con, the exclusive distribution

conditions for the existence of a contract is the consent of the parties. See P.R. Laws Ann. tit. 31, § 3391; see also Citibank Glob. Mkts., Inc. v. Rodríguez-Santana, 573 F.3d 17, 24 (1st Cir. 2009). Although Daikin Applied correctly argue that the fact that the written agreement was not signed by both parties does not necessarily entail the inexistence of consent (and of the contract itself), the Court finds that a ruling on this matter would require the consideration of competing factual theories and evidence.[10]  In other words, this is an issue of fact that will require the parties to conduct discovery. At this stage, and in the context of a motion to remand based on fraudulent joinder, this issue must be resolved in plaintiff's favor. Accordingly, the Court finds that, at this stage, Defendants were not able to show the existence of a non-exclusive agreement.

> **C.** *Federal question jurisdiction pursuant to Section 205 of the FAA*

"It is well-established . . . that the FAA, standing alone, does not provide a basis for federal jurisdiction." Westmoreland Capital Corp. v. Findlay, 100 F.3d 263, 267 (2nd Cir. 1996) (citing Southland Corp. v. Keating, 465 U.S. 1, 15 n. 9 (1984));  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction.")); see also Vaden v. Discovery Bank, 556 U.S. 49, 59 (2009).  Chapter 2 of the FAA, however, "expressly grant federal courts jurisdiction to hear actions seeking to enforce an agreement or award falling under the Convention [on the Recognition and Enforcement of Foreign

---

rights [agreement] for Daikin branded products in Puerto Rico with Daikin Applied Latin America, LLC." Docket No. 26-1.

[10] And the financial statements submitted by the Defendants are not conclusive as to this issue.

Arbitral Awards ("Convention")]." Vaden, 556 U.S. at 59 n. 9; see also 9 U.S.C. § 203.[11] Thus, an action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. Id.; see also 9 U.S.C. § 203; Ruiz v. Carnival Corp., 754 F. Supp. 2d 1328, 1330 (S.D. Fl. 2010).

With regard to removal, Section 205 of the FAA allows defendants to remove a state court action at any time before trial when the subject matter of the lawsuit pending in a state court "*relates to* an arbitration agreement or award *falling under* the Convention." 9 U.S.C. § 205 (emphasis provided); see also Menorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 223 (1st Cir. 1995). An arbitration provision "falls under" the Convention if it: "(1) involves an agreement in writing to arbitrate a dispute; (2) arises out of a commercial legal relationship; (3) provides for arbitration in the territory of a Convention signatory, and (4) involves at least one non-American citizen or concerns property located abroad, involves performance or enforcement abroad, or has a reasonable relationship with a foreign state." Pioneer Nat. Res., U.S.A., Inc. v. Zurich Am. Ins. Co., Civ. 08-0227, 2009 WL 362030, at *2 (M.D. La. Feb. 10, 2009) (citing 9 U.S.C. § 202); see also 9 U.S.C. § 202; Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc., 455 F.3d 7, 16 n. 4 (1st Cir. 2006) (citing Ledee v. Ceramiche-Ragno, 684 F.2d 184 (1st Cir. 1982). Finally, the arbitration clause relates to the state cause of action "whenever the clause could conceivably have an effect on the outcome of the case." Beiser v. Weyler, 284 F. 3d 665, 671 (5th Cir. 2002); see also Acosta v. Master Maint. & Const. Inc., 452 F.3d 373, 378 (5th Cir. 2006).

Here, Defendants' argument fails at the first step of the inquiry. Although the Court has found no First Circuit case-law interpreting the "agreement in writing" requirement, the Second

---

[11] According to Section 203, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

Circuit has stated that it "require[s] 'both 'an arbitral clause in a contract' and 'an arbitration agreement' . . . 'signed by the parties or contained in an exchange of letters or telegrams.'" Maroc Fruit Bd. S.A. v. M/V VINSON, Civ. 10-10306, 2012 WL 2989195, at *2 (D. Mass. July 11, 2012) (quoting Kahn Lucas Lancaster, Inc. v. Lark Int'l, Ltd., 186 F.3d 210, 218 (2d Cir.1999)). From the amended notice of removal it is not clear that there is "an agreement in writing to arbitrate" as required by the Convention. See 9 U.S.C. § 202; Convention, Articles II(1), II(2); see also AGP Industries SA, (Perú) v. JPS Elastromerics Corp., 511 F. Supp.2d 212 (D. Mass. 2007). Removal under the Convention is an exception to the general rule that a federal question ordinarily must appear on the face of the complaint, and that a defense generally does not qualify a case for removal. Pioneer Nat. Res., U.S.A., Inc. v. Zurich Am. Ins. Co., Civ. 08-0227, 2009 WL 362030, at *2 (M.D. La. Feb. 10, 2009);  see also Beiser, 284 F. 3d at 671; Vaden, 556 U.S. at 59 n. 9. The defense, however, must arise under federal law *from the petition for removal alone, without taking evidence and without a merits-like inquiry*. Beiser, 284 F.3d at 671-2; see also 9 U.S.C. § 205.[12]  Since Defendants have failed to meet their burden of establishing that removal is proper, their alternative request for this Court to exercise federal question jurisdiction pursuant to 9 U.S.C. § 205 is hereby **DENIED**.

---

[12] Furthermore, arbitration is a matter of contract and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." InterGen N.V., 344 F.3d at 142-3 (1st Cir. 2003) (quoting AT&T Techs., Inc., 475 U.S. at 643); United States v. Interface Construction Corp., 553 F.3d 1150 (8th Cir. 2009); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 939 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter … courts generally … should apply ordinary state-law principles that govern the formation of contracts.").

**Civil No. 15-2683**

### IV. Conclusion

For the reasons stated above, Air-Con's motion to remand is **GRANTED** and the case is **REMANDED** to state court.

**SO ORDERED.**

In San Juan, Puerto Rico this 19th day of September, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge